**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Angela Odell,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-18-08256-PCT-SPL<br><br>**ORDER** |

At issue is the denial of Plaintiff Angela Odell's Applications for Supplemental Security Income Benefits and Disability Insurance Benefits by the Social Security Administration under the Social Security Act. Plaintiff filed a Complaint (Doc. 1), with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 12, Pl. Br.), Defendant Social Security Administration Commissioner's Response Brief (Doc. 13, Def. Br.), and Plaintiff's Reply Brief (Doc. 14, Reply). The Court has reviewed the briefs and Administrative Record (Doc. 10, R.) and now reverses the Administrative Law Judge's (ALJ) decision (R. at 39–56) as upheld by the Appeals Council (R. at 1–6).

**I.    BACKGROUND**

Plaintiff filed an application for Disability Insurance Benefits on December 18, 2014 for a period of disability beginning on March 18, 2012. (R. at 42.) On the same day, Plaintiff also filed an application for Supplemental Security Income Benefits, alleging the

same disability onset date. (R. at 42.) Her claims were denied initially on June 19, 2015, and upon reconsideration on December 17, 2015. (R. at 42.) On July 24, 2017, Plaintiff appeared before the ALJ for a video hearing regarding her claims. (R. at 42.) On November 15, 2017, the ALJ denied Plaintiff's claims, and on August 17, 2018, the Appeals Council denied Plaintiff's Request for Review of the ALJ's decision. (R. at 42.)

The Court has reviewed the medical evidence in its entirety and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. Upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on two severe impairments— degenerative disc disease and left shoulder dysfunction status post arthroplasty. (R. at 45.)

Ultimately, the ALJ evaluated the medical evidence and testimony and concluded that Plaintiff is not disabled. (R. at 49.) The ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (R. at 45.) The ALJ found that Plaintiff has the RFC to perform "light work," except that she would have several limitations. (R. at 46.) He found that Plaintiff can carry twenty pounds occasionally and ten pounds frequently. (R. at 46.) She can sit, stand, or walk for six hours per eight-hour workday. (R. at 46.) Plaintiff can occasionally climb ladders, ropes, or scaffolds. (R. at 46.) She can crawl and frequently climb ramps or stairs, balance, stoop, kneel, or crouch. (R. at 46.) She can occasionally reach overhead. (R. at 46.) Finally, she cannot have concentrated exposure to vibration, moving machinery, or unprotected heights. (R. at 46.) Consequently, the ALJ found that she "can perform her past relevant work as a Retail Manager, as generally performed in the national economy." (R. at 48.)

## II.  LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based

on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

## III. ANALYSIS

Plaintiff raises three arguments for the Court's consideration. (Pl. Br. at 1.) First, Plaintiff argues that the ALJ erred by giving reduced weight to the opinion of Dr. Ernest Mar, Plaintiff's treating physician. (Pl. Br. at 14.) Second, Plaintiff argues that the ALJ improperly rejected her symptom testimony. (Pl. Br. at 20.) Finally, Plaintiff argues that the ALJ erred by improperly relying on vocational expert testimony in supporting his decision. (Pl. Br. at 23.) Because the Court agrees with Plaintiff's first two arguments, the third argument is superfluous.[1]

### A. The ALJ erred by giving reduced weight to Dr. Mar's opinion.

Dr. Mar completed Disability Impairment Questionnaires on behalf of Plaintiff on March 27, 2015 and January 19, 2016. (R. at 300, 586.) Dr. Mar based his opinions on his treatment of Plaintiff between November 2013 and January 2016. (R. at 582.) He diagnosed Plaintiff with cervical degenerative disc disease, displaced lumbar intervertebrate disc disease, lumbar degenerative disc disease, left rotator cuff tear, fibromyalgia, and generalized anxiety disorder. (R. at 582.)

Dr. Mar opined that Plaintiff had a variety of limitations due to her impairments. (R. at 582–86.) He found that Plaintiff's symptoms included constant neck, left-shoulder, elbow, bilateral hand, joint, and hip pain. (R. at 583.) He also noted joint swelling and stiffness. (R. at 583.) He found that her pain was aggravated with stress, anxiety, increased ranges of motion, lifting, walking, sitting, and standing. (R. at 583.) Because of these symptoms, he found that Plaintiff would be limited to sitting for only two hours per workday, and standing or walking for two hours per workday. (R. at 584.) He also found that it would be medically necessary for Plaintiff to avoid continuous sitting for an entire workday, to elevate her legs while sitting, and to frequently alternate between sitting and

---

[1] Because the ALJ erred in weighing the opinion of Plaintiff's treating physician and Plaintiff's symptom testimony, his reliance on the vocational expert's testimony is necessarily erroneous. Hypothetical questions posed to a vocational expert must contain all of a claimant's limitations that are supported by substantial evidence. *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989). Because the ALJ did not correctly evaluate Plaintiff's limitations, the hypotheticals he offered to the vocational expert were incomplete.

moving around. (R. at 584.) Finally, he opined that Plaintiff has various limitations related to lifting, carrying, using her hands and arms, and concentrating. (R. at 584–85.) Consequently, he found that Plaintiff would need frequent unscheduled breaks and absences from work. (R. at 585–86.)

The ALJ gave Dr. Mar's opinion reduced weight because it was purportedly inconsistent with the rest of the record. (R. at 48.) The ALJ cited to various findings in the record that he found contradicted Dr. Mar's opinion. (R. at 48.) Thus, the ALJ gave substantial weight to the opinions of reviewing medical consultants because they "are highly qualified physicians who are also experts in Social Security disability evaluation and their opinion that the claimant can perform a wide range of light work activity is consistent with the medical evidence of record." (R. at 48.)

While "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "The medical opinion of a claimant's treating physician is given 'controlling weight' so long as 'it is well–supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the record].'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 1995) (citing 20 C.F.R. § 404.1527(c)(2)). If a treating physician's opinion is not given controlling weight, then the ALJ must consider the relevant factors listed in 20 C.F.R. § 404.1527(d)(2)–(6) and determine the appropriate weight to give the opinion. *Orn*, 495 F.3d at 632.

If a treating physician's opinion is contradicted by another doctor's opinion, the ALJ cannot reject the treating physician's opinion without "setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). A treating physician's opinion will often be entitled to significant deference, even when contradicted. *Orn*, 495 F.3d at 632–33. An

ALJ may not reject a treating doctor's opinion with boilerplate assertions or illusory conflicts between doctors' opinions based on isolated reports rather than the record as a whole. *Garrison v. Colvin*, 759 F.3d 995, 1012–14 (9th Cir. 2014).

Although the ALJ gave a sufficient reason to reject Dr. Mar's opinion—inconsistency with the record—that reason is not supported by substantial evidence. *See Murray*, 722 F.2d at 502. Instead, the record is largely consistent with Dr. Mar's opinion, and the ALJ did not explain why the medial records he cited to contradict Dr. Mar's opinion. *See Garrison v. Colvin*, 759 F.3d 995, 1012–14 (9th Cir. 2014) (emphasizing that the ALJ must consider the record as a whole rather than manufacture conflict by identifying isolated notes of improvement).

In rejecting Dr. Mar's opinion, the ALJ supported his analysis with medical records that do not contradict, and in many instances support, Dr. Mar's opinion. For example, the ALJ found that the alleged limitations in Plaintiff's arms were contradicted by records indicating normal motor strength and pain on palpation. (R. at 48.) But these records are dated before Plaintiff's spinal surgery and two shoulder surgeries. (R. at 48, 675, 1020, 1120.) Furthermore, the same records noted pain on palpation (i.e. applying pressure with hands or fingers). (R. at 48.) Since these records document the complained of pain and predate Plaintiff's multiple surgeries to remedy that pain, they do not contradict Dr. Mar's opinion.

Similarly, the ALJ's conclusion that Plaintiff responded to treatment and medication is unsupported. (R. at 48.) The ALJ cites to some records where Plaintiff states that her pain is tolerable with pain medication. (R. at 48, 562, 564.) However, those records predate her surgeries which were necessitated by her persistent pain. (R. at 48, 675, 1020, 1120.) Other records the ALJ cites as indicative of the efficacy of pain medication support Dr. Mar's opinion. For example, though some records note that Plaintiff's pain is tolerable with medication, they also note that she still has severe, chronic, and constant pain despite treatment. (R. at 963, 966.) Furthermore, the same records also note that Plaintiff has "increased pain with movement, looking up, looking down, and lifting," which corresponds

to Dr. Mar's findings. (R. at 583, 584, 585, 963, 966.) The ALJ erred because instances of partial or temporary improvement are not substantial evidence that contradicts a treating physician's opinion. *See Ghanim v. Colvin*, 763 F.3d 1154, 1161–62 (9th Cir. 2014) (stating that a treating physician's opinion may be rejected if contradicted by substantial evidence in the record, but scattered instances of partial or temporary improvement do not constitute such evidence).

Finally, the ALJ noted that Plaintiff's complaints regarding neck and shoulder pain diminished after her surgeries. (R. at 48.) However, the record indicates that Plaintiff still had neck, hip, and shoulder pain after her surgeries. (R. at 71, 73, 76, 900, 1070, 1079, 1112, 1113.) Additionally, the physical therapy prescribed by her doctor was described as "pain control" to alleviate rather than eliminate pain. (R. at 1114.) Since partial or temporary improvement in symptoms does not constitute substantial evidence to contradict a treating physician's opinion, the ALJ erred. *See Garrison*, 759 F.3d at 1017. Furthermore, some improvement in the midst of prolonged debilitating impairments is expected but does not mitigate the longitudinal evidence of disability. *Id*. at 1017 (stating that the ALJ must not cherry-pick isolated instances of improvement to support a finding of nondisability).

Ultimately, the record supports Dr. Mar's opinion. Years of medical records document Plaintiff's persistent and severe pain that largely did not respond to treatment, medication, physical therapy, or surgery. The ALJ used isolated instances of partial or temporary improvement to support a contrary finding. Consequently, the ALJ erred.

**B.    The ALJ erred by rejecting Plaintiff's symptom testimony.**

At the video hearing before the ALJ, Plaintiff testified to various limitations due to her impairments. (R. at 57–90.) She testified that she experiences "burning, stabbing pain" in her shoulders and neck that radiates to her knee and hip. (R. at 71, 76.) She testified that she has problems standing and walking because her "lower back feels like it's giving out." (R. at 77.) She testified that she can sit for only fifteen or twenty minutes. (R. at 76.) She also testified that she has difficulty turning or moving her head, weakness in her arm, an inability to drive, headaches, and issues with concentration. (R. at 70, 71, 72, 73, 74.)

The ALJ rejected Plaintiff's testimony because he found that her "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. at 46.) As support, the ALJ cites numerous medical records without explanation as to which records support or contradict Plaintiff's testimony. (R. at 47.) Many of the records support Plaintiff's testimony. (R. at 587, 1022, 1115, 1117.) Others might contradict Plaintiff's testimony, but the ALJ does not explain why, although such explanation is required. *See Treichler*, 775 F.3d at 1102. The ALJ concludes his analysis of Plaintiff's symptom testimony with a statement that his RFC calculation "is supported by the totality of the medical evidence, objective findings, and the opinions of the individuals who have had the opportunity to assess [Plaintiff] and her abilities, as well as the subjective allegations of [Plaintiff]." (R. at 47–48.)

An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison*, 759 F.3d at 1014. First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Liegenfelter*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotation marks omitted)). If the claimant presents such evidence then "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014–15 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). This is the most demanding standard in Social Security cases. *Id*. at 1015. "In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). Finally, an ALJ's vague and conclusory statement that a claimant's symptom testimony is inconsistent with the record is not a sufficient reason to reject that testimony. *Treichler v. Comm'r of Soc. Sec. Admin*., 775

| | |
|---|---|
| 1 | F.3d 1090, 1103-02 (9th Cir. 2014). |
| 2 | The ALJ's rejection of Plaintiff's symptom testimony falls far short of the "specific, |
| 3 | clear and convincing" justification required. *See Garrison*, 759 F.3d at 1014–15. The ALJ |
| 4 | offered only vague, boilerplate justifications for why Plaintiff's testimony was inconsistent |
| 5 | with the rest of the record. (R. at 47–48.) Furthermore, the ALJ's recitation of the contents |
| 6 | of Plaintiff's medical records, without explanation of why those records support the ALJ's |
| 7 | conclusion is error. *See Laborin v. Berryhill*, 867 F.3d 1151, 1152–54 (9th Cir. 2017) |
| 8 | (emphasizing that the ALJ must provide thorough discussion and analysis of why the |
| 9 | claimant's testimony is incredible); *see also Treichler*, 775 F.3d at 1103 (stating that an |
| 10 | ALJ must offer specific findings in support of conclusions that testimony is not credible). |

      **C.**     **Remand for calculation and payment of benefits is appropriate.**

The credit-as-true rule, if applied here, would result in a remand of Plaintiff's case for a calculation and payment of benefits. *Garrison*, 759 F.3d at 1020. It applies if each part of a three-part test is satisfied. *Id*. First, the record must have been fully developed and further administrative proceedings would serve no useful purpose. *Id*. Next, the ALJ must have failed to provide sufficient reasons for rejecting claimant's testimony or medical opinions. *Id*. Finally, if the improperly discredited evidence were credited as true, then the ALJ would be required to find the claimant disabled. *Id*. The credit-as-true rule allows for some flexibility and balances efficiency and fairness in conjunction with the requirement that a claimant actually be disabled in order to receive benefits. *Id*. at 1021.

Here, the rule applies because each part of the test is met, and fairness justifies remanding the case for calculation and payment of benefits. First, the record is fully developed, and further proceedings would serve no useful purpose. The record contains extensive medical evidence regarding Plaintiff's limitations. Second, as discussed above, the ALJ erred by improperly evaluating Dr. Mar's opinion and Plaintiff's testimony. Finally, if the improper evidence were credited as true, then the ALJ would be required to find Plaintiff disabled. As the ALJ explained at the hearing, "it's clear that if I accept Dr. Mars [sic] limitations that he propounded that this lady could not sustain work." (R. at 88.)

Furthermore, fairness dictates that a remand for benefits is appropriate. There is no serious doubt that Plaintiff is, in fact, disabled. *See Garrison*, 759 F.3d at 1021. The record as a whole indicates that Plaintiff has been disabled since her onset date of March 18, 2012. It would be fair and efficient to grant Plaintiff benefits because she has been disabled for several years while her case has made its way through the system. Finally, further proceedings would unnecessarily delay Plaintiff's receipt of benefits. This is especially true since the ALJ made significant errors at the first hearing, which justifies denying the Commissioner another bite at the apple. *Id.* at 1021–22.

Therefore, it is unnecessary to remand for further administrative proceedings, and the Court will remand for a calculation and entry of benefits.

**IT IS THEREFORE ORDERED** reversing the November 15, 2017 decision of the Administrative Law Judge, (R. at 39–56), as upheld by the Appeals Council on August 17, 2018 (R. at 1–6).

**IT IS FURTHER ORDERED** remanding this case to the Social Security Administration for a calculation of benefits.

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 15th day of November, 2019.

Honorable Steven P. Logan
United States District Judge